**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JESSICA SUTTON, individually and on behalf of minor child, A.M.R. <br><br> Plaintiff, <br><br> v. <br><br> KIEFER PUBLIC SCHOOLS, an independent public school district; <br><br> KIEFER PUBLIC SCHOOLS BOARD OF EDUCATION, a governmental subdivision; and <br><br> MARY MURRELL,[1] individually and in her official capacity, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 21-CV-369-TCK-JFJ |

## OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56(a) by Defendants Kiefer Public Schools (KPS), Kiefer Public School Board of Education (KPS Board), and Mary Murrell, in her individual and official capacity as KPS Superintendent (collectively, Defendants) (Doc. 42). Plaintiff Jessica Sutton (Plaintiff), individually and on behalf of her minor child, A.M.R., filed a Response to Defendant's Motion (Doc. 47) and separately filed the exhibits for her Response (Doc. 48). Defendants filed their Reply (Doc. 51), and Plaintiff filed an Errata to her Response Exhibits (Doc. 55), which provided two deposition transcripts that were missing from the record.

---

1. The Court notes that the Notice (Doc. 2), Complaint (Doc. 2-1), and subsequent filings have spelled Defendant Murrell's last name as "Murell." The Court's docket also spells Defendant's last name as "Murell." However, the parties' motions and briefing spell Defendant's name as "Murrell." Notably, Defendant passed away on October 4, 2021, and the Statement of Death spells her name as "Murrell." (Doc. 8 at 1). Thus, the Court changes the spelling of Defendant's last name in the caption, and the Clerk of the Court shall note this change on the record.

This case arises from an incident in which A.M.R., a minor child, was exposed to an intellectually disabled boy with his pants down in the girls' restroom during an after-hours school carnival at KPS. After the school carnival incident, the boy—who was not a KPS student—continued to attend various non-school sponsored events held on KPS property with his family. Although there were no further incidents involving the boy, Plaintiff, who is the mother of A.M.R., contends that KPS inadequately responded to the school carnival incident and should have banned the boy from entering KPS property. To that end, Plaintiff, individually and on behalf of A.M.R., filed suit against Defendant KPS, the KPS Board, and Mary Murrell, the superintendent of KPS at the time of the school carnival incident. Plaintiff's Complaint asserts claims against all Defendants for negligence; discrimination and retaliation under Title IX, 20 U.S.C. § 1681(a); intentional infliction of emotional distress; and punitive damages.

Defendants now move for summary judgment, requesting dismissal of the Complaint in its entirety. Plaintiff concedes that the Board and Murrell are not proper parties; that the intentional infliction of emotional distress claim should be dismissed; and that punitive damages are not available in this case. (Doc. 47 at 20-21). Accordingly, Plaintiff's negligence and Title IX claims against KPS are the only issues remaining for the Court's consideration on summary judgment.

## I.  UNCONTROVERTED MATERIAL FACTS[2]

---

2. Although Plaintiff at least partially objected to many of the 31 Uncontroverted Statements of Fact in Defendants' Motion, the lion's share of her objections are contrary to the requirements of Fed. R. Civ. P. 56 and Local Rule 56.1(c). Specifically, Local Rule 56.1(e) provides that "[e]ach individual statement . . . shall be followed by citation, with particularity, to any evidentiary material that the party presents in support of its position." Here, not only are there instances in which Plaintiff disputes facts in the record without any citation to the record, but Plaintiff also makes statements that are not supported by the record cited. Additionally, at several points in her Response, Plaintiff admits to the substance of a statement of fact but partially objects to the statement merely to recharacterize it. Thus, the Court includes only facts that are supported by the record before the Court or facts not genuinely in dispute. Facts proposed by the parties that the Court finds irrelevant to the issues addressed herein are omitted.

**A. School Carnival Incident**

On October 24, 2019, Plaintiff and her, A.M.R., attended a school carnival that was being held in the KPS cafeteria, where A.M.R. attended school. (Doc. 2-1 at, 2; Sutton Dep. 51:1-3). Based on the timestamps from KPS surveillance video of the carnival, at some point before 19:42:00, A.M.R. went into the girls' restroom.[3] (Doc. 42-2). At 19:43:07, a boy entered the same girls' restroom. (*Id.*) At 19:43:19—approximately 12 seconds after the boy is seen entering the restroom—a visibly distraught A.M.R. exits the restroom. (*Id.*) Based on the same security video, the boy can be seen in the distance prior to entering the girls' restroom, casually talking with two adults and two kids, who are ostensibly the boy's family. (*Id.*) The boy then casually makes his way to the restroom, and as he exits the restroom at 19:44:03, he is greeted by his apparent family. (*Id.*) It was later determined that the boy was not a KPS student, but that his mother was in a relationship with Darrin Nance (Nance), whose children were enrolled in KPS, (Sutton Dep. 88:24-25, 104:1-3; Doc. 42-6 at 1), thus explaining the boy's presence at the school carnival.

According to A.M.R., who was nine years old at the time of the incident, while she was in the restroom, she heard someone banging on the door, and as she walked out of the bathroom stall, she saw the boy with his pants down (Doc. 2-1 at ¶¶ 12, 16; A.M.R. Dep. 17:23-18:18) and exposing himself. (Sutton Dep. 58:25-59:4). A.M.R. testified that the boy did not say anything to her, nor did the boy try to touch or grab her. (A.M.R. Dep. 18:23-19:3). A.M.R. told Plaintiff about the incident after they had returned home from the carnival later that evening. (Doc. 2-1). Plaintiff then contacted Cory Campbell (Campbell), who was the KPS high school principal and the district's Title IX coordinator at the time of the incident, and Plaintiff informed him of what had taken place during the carnival. (Sutton Dep. 63:20-23; Doc. 46-7 at 3).

---

3. The security video begins at timestamp 19:42:00, and A.M.R. is not seen entering the restroom.

Upon learning of the incident—that same evening—Campbell met with Plaintiff and her daughters at the school to discuss the incident and review the security camera video. (Sutton Dep. 65:15-66:21; Campbell Dep. 95:23-96:5). Two Kiefer Police Department officers, including the Kiefer Chief of Police Johnny Omara (Omara), and a school employee, Donny Murrell, were also present at the school that evening to review the security camera video with Plaintiff and Campbell. (Sutton Dep. 68:4-10). In addition to reviewing the security camera video, the police officers interviewed Plaintiff and A.M.R. that evening. (*Id.*) According to a letter from Omara to Mary Murrell, the Kiefer Police Department further investigated the incident, interviewing persons involved in the incident, and confirmed that the boy was a juvenile with a mental disability that significantly limited his mental capacity. (Doc. 42-4).[4] The Kiefer Police Department forwarded the case file to the Creek County District Attorney's Office and notified the Department of Human Services, Child Welfare Division. (*Id.*) No charges were filed against the boy by the District Attorney's Office. (*Id.*)

## B.  Subsequent Events on KPS Property

---

4. Plaintiff objects to the undated and unsigned letter from Omara to Mary Murrell, (Doc. 42-4), arguing that the document is inadmissible hearsay because the document is unauthenticated with no independent indicia of reliability. (Doc. 47 at 5). While Plaintiff maintains that the letter was not included in the production of documents from the Kiefer Police Department, (Doc. 47 at 5), Defendants respond that it was produced in discovery, (Doc. 51 at 2). Fed. R. Civ. P. 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." However, materials in support of a fact need only be admissible in content. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). Given that Plaintiff does not dispute the majority of the letter's content and that the letter is printed on the Kiefer Police Department letterhead, there is "at least . . . a prima facie aura of reliability" justifying the Court's consideration of the letter. *Oglesby v. Coca-Cola Bottling Co. of Chicago/Wisconsin*, 620 F. Supp. 1336, 1345 (N.D. Ill. 1985) (quoting *Olympic Ins. Co. v. H. D. Harrison, Inc*., 418 F.2d 669, 670 (5th Cir. 1969)). Furthermore, Plaintiff's objection to the exhibit does not itself create a genuine issue of fact, particularly because the thrust of the letter's content is not disputed. *Spatz v. Nascone*, 364 F. Supp. 967, 970-71 (W.D. Pa. 1973) ("[T]he Court is authorized to examine preferred [sic] materials extraneous to the pleadings not for the purpose of trying an issue but to determine whether there is a genuine issue of material fact to be tried.").

On October 26, 2019—the weekend after the school carnival incident—Plaintiff claims that the boy and his mother were observed attending a little league football game held at the KPS football stadium. (Doc. 2-1 at ¶ 20; Sutton Dep. 86:9-16, 87:3-24). The parties agree that, although the game was being played at the KPS football stadium, it was not a school-sponsored activity. (Doc. 42 at 5, ¶ 11; Doc. 47 at 7, ¶ 11; Campbell Dep. 63:9-64:2). A.M.R., a little league football cheerleader at the time (and still is), was also at the game with Plaintiff. (A.M.R. Dep. 15:14-16:6; Sutton Dep. 86:15-16). Plaintiff texted Campbell to inform him that the boy was at the football game and told him that she was uncomfortable with the boy being there. (Sutton Dep. 88:15-17). Campbell, whose daughter was also a little league football cheerleader, happened to be in attendance at the game as well. (Campbell Dep. 97:19-21). Campbell responded to Plaintiff, telling her that he "would get with the superintendent and ask what [the] next step would be and . . . left it at that." (Campbell Dep. 97:24-98:2). After conferring with Superintendent Mary Murrell, it was Campbell's understanding that nothing further could be done because the football game was not a school-sponsored event. (Campbell Dep. 98:3-25).

When A.M.R. observed the boy in the bleachers at the stadium, she was under the bleachers and then cheering on the field. (Sutton Dep. 92:7-21). Plaintiff stated that, upon seeing the boy, A.M.R. became tearful, stopped cheering, and walked over to Plaintiff to ask why the boy was at the game. (Sutton Dep. 93:4-22). The situation deescalated when Plaintiff's husband had a "cordial" discussion with Nance at the game, in which Plaintiff's husband explained to Nance that A.M.R. was upset by the boy's presence at the game. (Campbell Dep. 146:24-147:2; Sutton Dep. 88:24-89:13). After the conversation between Plaintiff's husband and Nance, the boy and his mother left the game without further incident, and A.M.R. continued to cheer at the game. (Sutton Dep. 89:15-22, 95:9-12; Campbell Dep. 147:2-4).

Subsequently, the boy was present at other non-school-sponsored little league football games. (Sutton Dep. 179:3-6, 180:5-17; Campbell Dep. 63:9-64:2, 209:6-15). A.M.R. stated that, when she was cheering at subsequent football games and observed the boy with his parents at those games, she did not leave and continued to cheer. (A.M.R. Dep. 23:22-25:11). A.M.R. further testified that, if she saw the boy at football games, she would just avoid him by turning around and going in a different direction, but notably, she did not leave the game because he was there. (A.M.R. Dep. 23:22-24:5, 24:20-25:11). In fact, following the incident involving the boy, A.M.R. has not been prevented from participating in any school activities, such as band, basketball, cross-country, or cheerleading, (Sutton Dep. 169:1-9, 175:3-176:1, 194:25-195:1; A.M.R. Dep. 11:18-20, 14:13-15, 15:11-16, 27:24-28:10, 38:11-15), nor has A.M.R. had any problems at school because of the incident with the boy, (A.M.R. Dep. 27:24-28:24). While A.M.R. testified that she still thinks about the incident and gets "a little nervous" about attending school events, A.M.R. stated that she did not have any fears about going back to school. (A.M.R. Dep. 27:24-28:14, 36:24-37:1). To the extent that A.M.R. articulated any limitations related to the school carnival incident, she testified that she wanted someone to accompany her when she uses the restroom. (A.M.R. Dep. 26:1-5).[5] Lastly, while A.M.R. believes someone should have been present to make sure the boy went into the correct restroom during the school carnival, she testified that she did not believe the boy meant to go into the wrong restroom. (A.M.R. Dep. 20:13-19).

---

5. Plaintiff asserts that A.M.R. "lives in fear everyday" and that she "refused to use the restroom at school for the remainder of the 2019-2020 school year." (Doc. 47 at 9). Neither of these assertions contain cites to the record, nor do they find support in the record before the Court. Further, Plaintiff's statement regarding A.M.R.'s use of the restroom is misleading, at best. When specifically asked whether there was ever a time in which she was not able to use the restroom at school, A.M.R. responded, "no." (A.M.R. Dep. 26:12-14).

Plaintiff acknowledged that she does not feel like A.M.R. is in danger while at school, but that her fear is limited to afterschool activities in which A.M.R. participates because the boy "could be there at any time." (Sutton Dep. 170:25-171:10). Despite A.M.R.'s continued enrollment at KPS and participation in after-school activities following the incident, Plaintiff maintained that the boy should have been banned from attending after-school activities on KPS property. (Sutton Dep. 107:22-108:5).

### C.  Alleged Retaliation

Plaintiff claims that, rather than address her concerns about the boy's presence at after-school events, Superintendent Mary Murrell refused to speak with Plaintiff about the situation and that Mary Murrell retaliated and "engaged in a campaign of harassment against Plaintiff." (Doc. 2-1 at ¶¶ 25-29). Specifically, Plaintiff asserts that she was precluded from substitute teaching in retaliation for speaking out about the incident. (Docs. 2-1 at ¶ 25; 42 at 7, ¶ 22; 47 at 10). Plaintiff evidences this assertion with Campbell's testimony that Mary Murrell enjoined KPS principals from having Plaintiff substitute teach in their buildings. (Doc. 47 at 11-12; Campbell Dep. 83: 3-13). With respect to the claimed harassment following the incident, Plaintiff testified that teachers ceased their "open-door" policy with her and that she was no longer allowed to participate in the Parent Teacher Association (PTA) under Mary Murrell's instructions. (Sutton Dep. 147:2-149:10). In particular, Plaintiff testified that two KPS principals verbally communicated to her that Mary Murrell instructed them not to allow Plaintiff to participate in the PTA. (*Id.*) Such PTA participation included volunteering and decorating at the school. (Sutton Dep. 144:6-23). The Complaint alleges that the harassment and retaliation were "so severe" that Plaintiff and her family were forced "to sell their home and leave the Kiefer community." (Doc. 2-1 at ¶ 32).

Notwithstanding her allegations of harassment and retaliation, Plaintiff testified that she may have been used as a substitute teacher after the incident and that she knew there was never a guarantee that she would be used as a substitute. (Sutton Dep. 35:2-7, 37:3-9). Moreover, Campbell equivocated about whether Mary Murrell's instruction to ban Plaintiff from substitute teaching was before or after the school carnival incident—first testifying that it was before the school carnival incident and later relenting that he could not say for certain that it was. (Campbell Dep. 82:20-83:10, 205:7-212:20). Additionally, Plaintiff stated in an email that "[Mary Murrell] has made it her duty to personally black list me from being able to volunteer or substitute teach at the school because I have voiced my concerns about her leadership of our school," among which include nepotism, a "homecoming float situation," and the 2018 hiring of Jayson Larremore. (Doc. 42-6 at 1-2). The record also reflects that Plaintiff sold her house at a profit, continued A.M.R.'s enrollment at KPS at all times, moved to an apartment for two months during the summer, and purchased a new home in Kiefer—though Plaintiff attributes her purchase of a home in Kiefer to Mary Murrell resigning, as "she was the source" of Plaintiff's issues, (Docs. 42 at ¶ 30; 47 at 13; Sutton Dep. 194:11-15). Lastly, Plaintiff concedes that the alleged actions taken by KPS had nothing to do with A.M.R.'s gender. (Docs. 42 at ¶ 26; 47 at 12).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id.*

8

However, the party opposing a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

A movant who "will not bear the burden of persuasion at trial need not negate the nonmovant's claim, "but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* In response to a motion for summary judgment, the nonmoving party "may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted). "The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Id.*

## III. ANALYSIS

### A. Plaintiff's Title IX Claim

Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A funding recipient may be liable for damages under this statute in cases of peer-based sexual harassment, where the funding recipient "acts with deliberate indifference to known acts of [sexual] harassment

in its programs or activities." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999). The Tenth Circuit has articulated a four-part test to establish a Title IX violation by a school district: (1) the school district had actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive, and objectively offensive, as to (4) deprive access to the educational benefits or opportunities provided by the school. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999)).

As a preliminary matter, the Court notes that Defendants' Motion for Summary Judgment briefly addresses the issue of whether this case rises to the level of sex-based harassment contemplated under Title IX. (Doc. 42 at 16). Plaintiff responds that the "gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome." (Doc. 47 at 16) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986)). Because the boy's exposure to A.M.R. was "a form of sexual advance and . . . certainly unwelcome," Plaintiff argues, the case falls within the purview of sexual harassment under Title IX. (Doc. 47 at 16-17).

"Title IX does not provide for liability to be imposed due to any type of [peer]  harassment . . . [i]t must be gender-oriented." *Whitley v. Indep. Sch. Dist. No. 10 of Dewey Cnty., Oklahoma*, 2019 WL 7667329, at *5 (W.D. Okla. Apr. 22, 2019) (citing *Davis*, 536 U.S. at 651); *see also Wolfe v. Fayetteville, Arkansas School District*, 648 F.3d 860, 862 (8th Cir. 2011) (holding that "proof of sex-based motivation is required for a Title IX deliberate indifference claim"). Here, Plaintiff does not seek Title IX liability against Defendants for the school carnival incident, and she concedes that Defendants' actions were not gender-based. (Docs. 42 at ¶¶ 26, 31; 47 at 12-13). Further, Plaintiff has not propounded any evidence that the boy's conduct was sexually motivated and, thus, remediable under Title IX. To the contrary, A.M.R. testified that she did not believe that

the boy intended to enter the wrong restroom on the night of the school carnival, and that anytime she saw him after the incident, it was at an after-school activity and the boy was with his parents. (A.M.R. Dep. 20:13-19, 23:22-25:11; Docs. 42 at ¶ 21; 47 at 10). In short, the undisputed material evidence in the record shows that a mentally handicapped boy attended a school event with his family, entered the wrong restroom, and then continued to attend non-school sponsored activities with his family, and A.M.R. also happened to attend those same non-school sponsored activities with her family.

The Court is not convinced that "on the basis of sex" under 20 U.S.C. § 1681(a) imports such an expansive meaning that it would include an isolated and unintentional act by a person with a mental disability, and a school's subsequent decision not to prohibit that person from school property. Simply stated, Plaintiff has not established that the boy's "underlying motivation" in exposing himself was hostility toward A.M.R.'s gender. *Wolf*, 648 F.3d at 867. That A.M.R. was "scarred from th[e] incident" does not establish gender-based conduct actionable under Title IX, nor does the fact that Plaintiff was "very upset" and "felt the boys [sic] mother should be held responsible." (Doc. 42-6).

Even if the Court were to employ Plaintiff's expansive definition of "sexual harassment," Plaintiff's claim fares no better when evaluating the elements of Title IX liability. The parties do not dispute the "actual knowledge" element, and thus, the Court turns to whether Defendants were "deliberately indifferent" to Plaintiff's sexual harassment claim.

A school district is deliberately indifferent to acts of student-on-student harassment "only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. This standard requires more egregious conduct than required for simple or even heightened negligence. *See Bd. of Cnty. Comm'rs of Bryan Cnty.,*

*Okla. v. Brown*, 520 U.S. 397, 407 (1997). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

As to remedial measures, schools need not expel every student accused of sexual harassment to protect themselves from liability, and "victims of peer harassment [do not] have a Title IX right to make particular remedial demands." *Rost*, 511 F.3d at 1123 (quoting *Davis*, 526 U.S. at 648) (alteration original). "The standard is not that schools must 'remedy' peer harassment, but that they 'must merely respond to known peer harassment in a manner that is not clearly unreasonable.'" *Id.* (quoting *Davis*, 526 U.S. at 648-49). Additionally, as to a school's investigation, Title IX does not require "flawless investigations [or] perfect solutions." *Id.* (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007)) (alteration original).

The Supreme Court has indicated that, in applying the deliberate indifference standard, courts should not second guess school disciplinary decisions. *Davis*, 526 U.S. at 648. In addition, a school district's failure to implement a sexual harassment policy or follow its own policy does not establish a violation of Title IX. *See Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 291-92 (1998); *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1340 (D. Kan. 2008) (explaining that the failure to implement sexual harassment policies and procedures is insufficient to establish Title IX liability "because this failure does not imply the school district's actual notice of any sexual harassment or its deliberate indifference thereto").

Here, Plaintiff contends that KPS acted with deliberate indifference by failing to investigate the school carnival incident, refusing to take any remedial measures, and retaliating against Plaintiff for her complaint. (Doc. 47 at 17). In particular, Plaintiff contends that KPS took no action

after the meeting on the night of the school carnival, instead relying "wholly" on the police investigation, and even then, did not keep Plaintiff apprised of the investigation status. (*Id.*) Further, Plaintiff asserts that Defendants "ignore[e] the broader scope of potential remedial measures available" to them in their decision to "d[o] nothing" following the school carnival incident. (*Id.*) Lastly, Plaintiff argues that retaliation against a complainant of sex discrimination is a violation of Title IX because "such retaliation is intentional discrimination on the basis of sex." (*Id.* at 18) (quoting *Doe v. Sch. Dist. No. 1, Denver, Colorado*, 970 F.3d 1300, 1315 (10th Cir. 2020)). From this, Plaintiff concludes that "[a] reasonable jury could conclude Defendants' refusal to respond at all and retaliation" was clearly unreasonable. (*Id.*) The Court disagrees.

The undisputed material facts establish that, on the very same night he was notified of potential sexual harassment, the KPS Title IX coordinator, Cory Campbell, assembled a meeting with another KPS employee and two Kiefer police officers—including the Kiefer Police Chief— to review the security camera video. Plaintiff and A.M.R. reviewed the video with Campbell, the officers, and Donny Murrell; then, Plaintiff and A.M.R. provided a statement to the Kiefer police officers as part of their investigation. It was during this meeting that the identity of the boy and his mental disability was discovered. (Doc. 42-6 at 1) ("Through [the] investigation that evening . . . it was found out who the person was . . . he was actually a 17 year old boy who lives in another school district [and] has a mental disability."). The record patently reflects that Defendants investigated the incident, and given the boy's age and mental disability, Defendants believed no further action was necessary after turning the matter over to law enforcement. (Campbell Dep. 95:19-96:8) ("I felt like I did what I was supposed to do and then . . . pass it on from there."). Plaintiff merely confuses a failure to investigate with her desire for a more robust investigation. However, as explained above, Title IX does not require "flawless investigations." *Rost*, 511 F.3d

at 1123. Thus, the Court finds that, based on the uncontroverted material facts, no reasonable juror could conclude that Defendants' investigation of the school carnival incident was clearly unreasonable.

Plaintiff's insistence that Defendants failed to take remedial measures following the school carnival incident is similarly misguided. The parties do not dispute that the boy was not a KPS student, nor do the parties dispute that none of the afterschool activities the boy attended after the school carnival incident were school-sponsored. Further, Plaintiff concedes that her Title IX claim relates only to the adequacy of Defendants' response to the school carnival incident—not the incident itself. While Plaintiff urges that Defendants "ignore[ed] the broader scope of potential remedial measures available," (Doc. 47 at 17), the record is devoid of any action within the Defendants' control that could have been taken—short of banning a mentally handicapped boy from school property. The record is, however, replete with Plaintiff's insistence that Defendants should have banned the boy from school property.[6]

As the Supreme Court explained in *Davis*, a private cause of action under Title IX for peer-based harassment will lie only when a district "exercises substantial control over both the harasser and the context in which the known harassment occurs." 536 U.S. at 645. Given that the boy was not a KPS student and that the activities related to Plaintiff's complaint were not-school sponsored, the undisputed material facts establish that the only context over which Defendants had control was the boy's presence on KPS property. Thus, Plaintiff's Title IX claim essentially presents itself as a Hobson's Choice: Defendants could have implemented any remedial measures, as long as it

---

6. *See e.g.*, Sutton Dep. 108:4-5 ("I wanted him completely banned from the school"); Doc. 42-6 at 1 ("The police said the school needed to file a no trespassing order on the child so he could not attend events any longer and I felt it was the schools [sic] duty to do this . . . ."); Doc. 42-8 at 3 ("Defendants should have banned the non-student perpetrator from school property . . . .").

entailed banning a mentally handicapped boy from KPS property. However, the Supreme Court has admonished courts to "refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* at 648. To the extent that Plaintiff claims that Defendants' inaction was a violation of its own sexual harassment policy, (Doc. 47 at 17), such failure "would sound in negligence, not deliberate indifference" under Title IX. *Rost*, 511 F.3d at 1122. Considering the undisputed facts and construing them in favor of Plaintiff, no reasonable jury could conclude that the Defendants' refusal to ban a mentally handicapped boy from KPS property was clearly unreasonable in light of the known circumstances.

Finally, Plaintiff has failed to produce evidence demonstrating that Defendants acted in retaliation against her for reporting alleged harassment. Plaintiff testified that, based on her conversations with KPS principals, she was told that the principals were prohibited from hiring her as a substitute teacher for the 2021 school year—after she "became more vocal about things not being done at the school." (Sutton Dep. 130:20-25, 150:4-5). The record also reflects that Plaintiff's complaint about the Defendants, and Mary Murrell specifically, involved a great deal more than simply her displeasure with their handling of her Title IX complaint. (*See* Doc. 42-6). Viewed in a light most favorable to Plaintiff, the evidence reflects only a loose correlation between the time of her Title IX complaint and the time when she was no longer allowed to substitute teach. To the extent that Defendants did refuse to have Plaintiff substitute teach on account of her becoming "more vocal about the things not being done at the school," the record reveals that Plaintiff took exception with KPS administration's handling of several other issues, in addition to its handling of her Title IX complaint. (*Id.*) Without evidence connecting Defendants' alleged refusal to have Plaintiff substitute, the alleged ban is no more attributable to Plaintiff's Title IX complaint than it is to Plaintiff speaking out about Mary Murrell's "shear [sic] nepotism" or the

"homecoming float situation." (*Id.* at 2). Accordingly, based on the evidence viewed in a light most favorable to Plaintiff, the Court cannot say that a reasonable juror could conclude that Defendants' alleged refusal to hire Plaintiff as a substitute teacher was in retaliation for making a Title IX complaint.

Plaintiff's failure to establish the boy's conduct as gender-oriented or motivated is sufficient to dismiss Plaintiff's Title IX claim because she has failed to establish that the conduct complained of was "on the basis of sex," as is required for liability under § 1681(a). And even assuming that the school carnival incident was sexual harassment actionable under Title IX, Plaintiff has not established that Defendants were deliberately indifferent to the alleged sexual harassment. To this point, Plaintiff's Title IX claim has been wrong at every turn, and the Court need not analyze the remaining elements of the claim. Because Plaintiff has failed to show that the alleged conduct was gender-motivated and because Defendants' actions were not clearly unreasonable in light of the circumstances, Plaintiff's Title IX claim must be dismissed. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Title IX claim is **GRANTED**.

### B. Plaintiff's Negligence Claim

Plaintiff's only remaining cause of action is based on the same factual circumstances as her Title IX claim but sounds in state-law negligence. The Court's subject matter jurisdiction over this state-law claim is based on 28 U.S.C. § 1367. (*See* Doc. 2 at ¶¶ 6-7). However, because the sole federal claim has been dismissed, this Court no longer has original subject matter jurisdiction under § 1331, and the Court has discretion to remand the state-law claim. *See* 28 U.S.C. § 1367(c)(3).

"[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 128, 141 S. Ct. 1385 (2021) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (alteration original)); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims.") (emphasis added). While a district court has discretion to exercise supplemental jurisdiction, a court should consider the "the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness" when exercising its discretion. *Thatcher Enterprises v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, the case has been pending for approximately 17 months, Defendants' Motion in Limine is the only motion currently pending in this case, (Doc. 49), and the parties have filed their deposition designations and counter-designations, (Docs. 50, 52), as well as their pretrial disclosures, (Docs. 58, 59). However, the parties have not submitted a proposed pretrial order, the pretrial conference has not been held, and the original trial date has already been continued due to a scheduling conflict, (Doc. 54). Moreover, Plaintiff has only one claim remaining, and it implicates an important state-law issue of immunity under the Oklahoma GTCA, namely whether Defendants' conduct is characterized as discretionary or ministerial for purposes of immunity under Okla. Stat. tit. 51, § 155(5)—an issue which has been described as "difficult" and has received divergent treatment between Oklahoma state and federal courts. *J.W. v. Indep. Sch. Dist. No. 10 of Dewey Cnty.*, 2021 OK CIV APP 34, ¶ 66, 500 P.3d 649, 664 ("Distinguishing between discretionary and ministerial activities can be difficult.") (quoting *Johnson v. Independent School*

*District No. 89 of Oklahoma County*, 2016 WL 1270266, *8 (W.D. Okla., March 31, 2016). Lastly, this Court is already laboring under the administrative strain on its docket following the Supreme Court decision *McGirt v. Oklahoma*, 207 L. Ed. 2d 985, 140 S. Ct. 2452 (2020). Because of the administrative demands on this Court, the important state-law issue that is best resolved by the Oklahoma courts, and the disfavor of retaining supplemental jurisdiction over state-law claims prior to trial, the Court finds that declining to exercise supplemental jurisdiction is appropriate in this case.

Because this case was removed from the District Court of Creek County, State of Oklahoma, the Court  may dismiss Plaintiff's remaining claim or remand it to the state court for further proceedings. *Robles v. City of Fort Wayne*, 113 F.3d 732, 738 (7th Cir. 1997) ("[I]t is clear that a district court retains the discretion to dismiss as well as to remand such claims.") (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 353–54 (1988)); *Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir. 2012) ("The district court had discretion either to remand the claims to the state court or to dismiss them."). Given that "remand may best promote the values of economy, convenience, fairness, and comity," *Cohill*, 484 U.S. at 353, the Court finds that remand is appropriate in this case.

## IV. CONCLUSION

Plaintiff has conceded her state-law intentional infliction of emotional distress claim and her request for punitive damages, (Doc. 47 at 20), and thus, those claims are dismissed. Additionally, Plaintiff has conceded that Mary Murrell (now deceased) and the Kiefer Public Schools Board of Education are not proper parties, and therefore, those parties are dismissed from this case. Because Defendants' actions were not clearly unreasonable as a matter of law, Plaintiff's Title IX claim must be dismissed. Further, because Plaintiff's only remaining claim sounds in

state-law negligence and because the Court declines to exercise supplemental jurisdiction over that claim, the case is remanded to the District Court of Creek County, Oklahoma. The school carnival was an unfortunate incident, and the Court is neither unmindful nor unsympathetic to the distress A.M.R. may feel in having to see the boy at subsequent after-school events. However unfortunate the situation may be, the fact remains that A.M.R.'s injury is not redressable under Title IX.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 42) is **GRANTED** in part and **DENIED** in part. Specifically, Defendants' Motion for Summary Judgment is granted with respect to the punitive damages claim, intentional infliction of emotional distress claim, and Title IX claim. Similarly, Defendants' Motion for Summary Judgment is granted with respect to the dismissal of Mary Murrell (now deceased) and the Kiefer Schools Board of Education as parties in the case. Lastly, Defendants' Motion for Summary Judgment on Plaintiff's state-law negligence claim is denied.

**IT IS FURTHER ORDERED** that Plaintiff's negligence claim is **REMANDED** to the District Court of Creek County, State of Oklahoma, pursuant to 28 U.S.C. § 1367(c)(3). The Clerk of the Court is directed to take all necessary actions required to remand the remaining portion of this case to the District Court of Creek County, State of Oklahoma.

**IT IS SO ORDERED** this 2nd day of December, 2022.

TERENCE C. KERN
United States District Judge